UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

MARTHA J. DURHAM,

    Plaintiff,

v.                                          Case No.:   2:22-cv-732-SPC-KCD

SEACREST COUNTRY DAY
SCHOOL, NANCY O'HARA and
KEVIN ASPEGREN,

    Defendants.
_____/

## OPINION AND ORDER[1]

Before the Court is Defendants Seacrest Country Day School's ("Seacrest"), Nancy O'Hara's, and Kevin Aspegren's Motion to Dismiss. (Doc. 12). Plaintiff Martha Durham responded in opposition. (Doc. 15). The matter is thus ripe for decision.

## BACKGROUND

This is an age discrimination and retaliation case. Durham worked at Seacrest for 21 years. She held multiple positions including Operations Director overseeing Human Resources, Facilities, Safety, and Budget. As such,

---

[1] Disclaimer: Papers hyperlinked to CM/ECF may be subject to PACER fees. By using hyperlinks, the Court does not endorse, recommend, approve, or guarantee any third parties or their services or products, nor does it have any agreements with them. The Court is not responsible for a hyperlink's functionality, and a failed hyperlink does not affect this Order.

Durham was a member of the Senior Management Team. Durham is 63 years old.

Seacrest is governed by a Board of Trustees and an Executive Board of Trustees.[2] Defendant Nancy O'Hara is the Chair of both. In February 2020, the Board hired Defendant Kevin Aspegren as Interim Head of School and later made his role permanent. Aspegren's actions towards Durham and others—and O'Hara's lack of action—are the basis of Durham's complaint.

Durham says Aspegren favored younger, white employees over older and racially diverse employees and that she opposed his actions. Specifically, Durham alleges Aspegren took the following discriminatory actions towards others: (1) hired three school heads failing to consider more senior and well-qualified candidates; (2) accused Hispanic cleaning staff of stealing; (3) told a 55-year old Business Manager to stop talking and later got into a heated argument after which the Business Manager resigned; (4) made disparaging remarks to a 59-year old college counselor candidate who said he wouldn't work with Aspegren; (5) fired a 68-year old teacher; (6) did not properly investigate claims of racial discrimination, harassment, and abuse at a school fundraiser; (7) publicly accused a deserving employee of seeking undeserved FMLA leave; (8) fired a 59-year old Asian/Indian teacher for uninvestigated allegations

---

[2] It not clear if the Board and Executive Board are Durham's employer(s).

2

against Durham's advice; (9) refused to meet with a 65-year old Hispanic groundskeeper; (10) directed Durham to terminate a Black, Haitian female who had just been hired as an administrative assistant despite that she was qualified and hired within budget; and (11) attempted to replace the 55-year old Brazilian program director with a younger white woman. Durham says she expressed concern about what she saw as Aspegren's discriminatory actions to O'Hara in at least June 2020 and October 2020.

Durham alleges Aspegren discriminated against her because of her age and retaliated against her for opposing his race and age discrimination against others by engaging in a "systematic campaign to ignore Durham, take away her responsibilities without telling her, exclude her from meetings she was supposed to attend, embarrass her publicly, ignore her suggestions and advice regarding employment matters, and sabotage her work." (Doc. 1 at ¶ 116). Specifically, Durham claims Aspegren: (1) never met with Durham to discuss the scope of her responsibilities, pressing budget matters, or her concern about his actions; (2) fired maintenance staff previously under Durham's direction without discussion; (3) promoted an employee to Facilities Manager without discussion and told the person he should no longer report to Durham; (4) filled multiple positions without discussion; (5) told Durham to "stop talking" at a New Employee Orientation; (6) took away her role recruiting and hiring a college counselor; (7) yelled Durham was an "idiot" in front of students and

3

staff; (8) told others Durham wanted to leave the school when she never said so; (9) reprimanded her for hiring a science teacher when that was within her job description and took away her ability to make employment offers; (10) purposefully excluded her from a leadership meeting she historically attended; and (11) moved her office. In July 2021, Durham resigned. She says she was replaced by someone approximately 19 years younger.

Durham challenges Aspegren's actions saying they constituted age discrimination against her and retaliation for opposing Aspegren's race and age discrimination of others in violation of the Age Discrimination in Employment Act ("ADEA"), Title VII of the Civil Rights Act ("Title VII"), and Florida Civil Rights Act ("FCRA"). She also claims intentional inflection of emotional distress ("IIED"), negligent hiring, and negligent retention. Defendants move to dismiss Durham's complaint under Fed. R. Civ. P. 12(b)(6).

## LEGAL STANDARD

A complaint must recite "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

To survive a Rule 12(b)(6) motion, a complaint must allege "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on

4

its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Bare "labels and conclusions, and a formulaic recitation of the elements of a cause of action," do not suffice. *Twombly*, 550 U.S. at 555. A district court should dismiss a claim when a party does not plead facts that make the claim facially plausible. *See Twombly*, 550 U.S. at 570. A claim is facially plausible when a court can draw a reasonable inference, based on the facts pled, that the opposing party is liable for the alleged misconduct. *See Iqbal*, 556 U.S. at 678. This plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 557 (internal quotation marks omitted)).

When considering dismissal, courts must accept all factual allegations in the complaint as true and draw all reasonable inferences in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008).

## DISCUSSION

Defendants raise many grounds for dismissal, the first being the Complaint is a shotgun pleading that violates Fed. R. Civ. P. 8. Shotgun pleadings violate Rule 8 because they "fail to . . . give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Weiland v. Palm Beach Cty. Sheriff's Off.*, 792 F.3d 1313, 1323 (11th Cir. 2015). Courts have little tolerance for shotgun pleadings. *See generally*

*Jackson v. Bank of Am.*, 898 F.3d 1348, 1357 (11th Cir. 2018) (detailing the "unacceptable consequences of shotgun pleading"); *Cramer v. Fla.*, 117 F.3d 1258, 1263 (11th Cir. 1997) ("Shotgun pleadings . . . exact an intolerable toll on the trial court's docket").

The Complaint here is a shotgun pleading for two reasons. First, "each count adopts the allegations of all proceeding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint." *Weiland*, 792 F.3d at 1321. (Doc. 1 at ¶¶ 130, 136, 160, 175, 190).

Second, the Complaint does not identify which counts are against which Defendants.³ *See Weiland*, 792 F.3d at 1321-23 (explaining one type of shotgun pleading is when "multiple claims [are asserted] against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against"). Nothing in the Complaint here specifies which Defendant the claims are brought

---

³ Defendants also argue the Complaint is a shotgun pleading because "it is replete with pages of irrelevant factual allegations that are not connected to any causes of action." (Doc. 12 at 5). Not quite. Although the relevancy of a few facts is a stretch (e.g., Aspegren's failure to test the portables for mold and the treatment of his ex-wife), the Complaint mostly provides facts giving context to Durham's age discrimination and retaliation claims. Remember, Durham alleges she opposed Aspegren's alleged discriminatory treatment of her and others, so facts about that treatment is far from irrelevant. Without such facts, Durham would only have made barebone conclusory statements that would likely not get past the pleading stage.

against. Take the IIED claim, for example—the Court can't tell if it is brought against just Aspegren or all Defendants.

Durham defends the Complaint arguing that it is "fairly obvious that all Claims were brought against all Defendants." (Doc. 15 at 2); *see also Kyle K. v. Chapman*, 208 F.3d 940, 944 (11th Cir. 2000) (explaining how a complaint is a shotgun pleading unless it "can be fairly read to aver that all defendants are responsible for the alleged conduct"). This argument is a nonstarter, as the counts for negligent hiring and retention show. It is unlikely Durham brings claims for negligent hiring and retention against Aspegren. Those claims would likely be against Seacrest and O'Hara for hiring and retaining Aspegren. But neither the Court nor Defendants can know for sure because the facts are not clearly delineated. The Court thus dismisses the Complaint as a shotgun pleading but gives Durham leave to amend.

Although the Court dismisses the Complaint for failing to follow Rule 8, the Court will address Defendants' other arguments for dismissal. There are four.

### 1. Individual liability

First, Defendants argue O'Hara and Aspegren must be dismissed from Durham's claims of age discrimination and retaliation because the ADEA, Title VII, and FCRA do not impose liability on individual employees or supervisors for acts of discrimination or retaliation. Defendants are correct. To recover

under the ADEA, Title VII, or FCRA, a plaintiff must sue her employer, either by naming the supervisory employee(s) as agents or by naming the employer directly.  See *Albra v. Advan, Inc.*, 490 F.3d 826, 830 (11th Cir. 2007); *Dearth v. Collins*, 441 F.3d 931, 933 (11th Cir. 2006); *Patterson v. Consumer Debt Mgmt. & Educ., Inc.*, 975 So. 2d 1290, 1292 (Fla. Dist. Ct. App. 2008).  "Any claims seeking to impose individual liability pursuant to these statutes are properly dismissed as a matter of law." *Brooks v. CSX Transp., Inc.*, No. 3:09-cv-379, 2009 WL 3208708, at *4 (M.D. Fla. Sept. 29, 2009).  So, to the extent that Durham sues Aspegren and O'Hara in their individual capacities under the ADEA, Title VII, and FCRA, she cannot do so.

### 2. Age Discrimination and Retaliation

To proceed with her claims under the ADEA, Title VII, and FCRA, Durham must allege sufficient facts to plausibly state a claim for age discrimination and retaliation.  But she appears to do so: Durham says she's over 40, she opposed Aspegren's discrimination of others and her, and faced negative consequences for doing so.  Durham also says she was qualified for her job and replaced by someone 19 years younger.

Defendants argue the negative consequences Durham faced fail to meet the required element of adverse employment action(s) because Durham "voluntarily resigned."  This argument flounders for two reasons.  First, Durham could (and does) argue she was constructively discharged. (Doc. 15 at

8

Pgs. 12-17); *see Hipp v. Liberty Nat. Life Ins. Co.*, 252 F.3d 1208, 1230 (11th Cir. 2001) ("We have long recognized that constructive discharge can qualify as an adverse employment decision under ADEA.").[4]  Second, an adverse employment decision need not be a discharge; it could also be discrimination "with respect to compensation, terms, conditions, or privileges of employment." 29 U.S.C. § 623; *see also Doe v. Dekalb Cnty. Sch. Dist.*, 145 F.3d 1441, 1447 (11th Cir. 1998) (discussing how termination, demotion, reduction in pay, loss of prestige, or diminishment of responsibilities are all "patently adverse actions").  Reading the complaint in the light most favorable to Durham, Aspegren functionally stripped Durham of her role as Operations Director and removed her from the senior management team.  Whether these were "adverse employment actions" is likely a question for a more developed record.[5]

Defendants also claim the alleged adverse employment actions prior to December 2020 are time-barred.  They say this because to sue under Title VII, Durham must have filed a charge of discrimination within 300 days of the date

---

[4] Durham should note this standard is "quite high." *Hipp v. Liberty Nat. Life Ins. Co.*, 252 F.3d 1208, 1230 (11th Cir. 2001).  But Defendants should note that whether Durham can prove constructive discharge is likely a matter for summary judgment or trial.  Defendants cite no caselaw determining this at a motion to dismiss stage.

[5] The Court further notes when a plaintiff alleges retaliation under the applicable statutes, a more expansive view of what constitutes an adverse employment action may apply.  *See Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006) ("We conclude that the antiretaliation provision does not confine the actions and harms it forbids to those that are related to employment or occur at the workplace"); *Saunders v. Emory Healthcare, Inc.*, 360 F. App'x 110, 115 (11th Cir. 2010) ("The scope of adverse employment actions is broader in the anti-retaliation context than in the anti-discrimination context").

9

of the alleged discriminatory conduct and she did not file until January 2022. Durham responds that she submitted her Intake Questionnaire and Request for Interview to the EEOC in August 2021, which meets the minimum requirements of "filing a charge." (Doc. 15 at Pg. 17).

Although the ADEA does require a charge to be filed with the EEOC for exhaustion of administrative remedies, it's settled that an intake questionnaire may fulfill such a requirement. *Fed. Exp. Corp. v. Holowecki*, 552 U.S. 389 (2008). For Title VII, a questionnaire may also constitute a charge. *Wilkerson v. Grinnell Corp.*, 270 F.3d 1314 (11th Cir. 2001) (finding an intake questionnaire satisfied the charge requirement in a Title VII case).

Defendants' remaining arguments for dismissal of Durham's discrimination and retaliation claims fail because Defendants misunderstand the pleading standard Durham must meet. The burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) is an evidentiary standard, not one for pleading. *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506 (2002). So Defendants' argument that Durham does not show but-for causation is irrelevant at this stage. *See Kyle K. v. Chapman*, 208 F.3d 940, 942 (11th Cir. 2000) (affirming the denial of a motion to dismiss even though "further procedures will be necessary in order to develop the claim against…defendants"). So too is Defendants' claim Durham was not replaced

by someone younger.[6] The Court is required to read the Complaint in the light most favorable to Durham, including her claim she opposed Aspegren's alleged discriminatory practices.

### 3. IIED

The Court turns next to the IIED claim. To state such a claim under Florida law, a plaintiff must allege (1) intentional or reckless conduct (2) that is outrageous and (3) causes the victim emotional distress (4) that is severe. *Kim v. Jung Hyun Chang*, 249 So. 3d 1300, 1305 (Fla. Dist. Ct. App. 2018). To show outrageousness, the plaintiff must allege conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Metro. Life Ins. Co. v. McCarson*, 467 So. 2d 277, 278-79 (Fla. 1985) (citation omitted). Liability does not "extend to mere insults, indignities,

---

[6] Defendants say there are central documents that show Durham is wrong. But in support, they attach only a one-page Volunteer & Employee Criminal History System Waiver Agreement and Statement. (*Doc. 12-2*). This Statement provides a person's name, address, and date of birth. Noticeably absent are details about the person's title and responsibilities at Seacrest. How the Court is supposed to use this at a motion to dismiss stage to say Durham was replaced by someone older is a mystery.

Defendants also waste time arguing Durham doesn't show she was treated differently than similarly situated individuals. But this does not even seem to be Durham's theory of liability. *See Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 142 (2000) (finding it "undisputed" that plaintiff established a prima facie case of discrimination when he was over 40, otherwise qualified for his position, discharged, and *replaced by people in their 30s* without a similarly situated individual) (emphasis added)).

11

threats, or false accusations." *Williams v. Worldwide Flight Servs. Inc.*, 877 So. 2d 869, 870 (Fla. Dist. Ct. App. 2004).

As pled, the allegations of Aspegren's conduct do not rise to the level of outrageousness required by Florida law. Although the Complaint alleges instances in which Aspegren may have acted inappropriately (e.g., telling Durham to stop speaking and calling her an idiot in front of others), Florida courts have repeatedly held that conduct far worse than that alleged here is insufficient to maintain a claim for IIED. *See Gomez v. City of Doral*, No. 21-11093, 2022 WL 19201, at *7 (11th Cir. Jan. 3, 2022) (citing employment-related cases denying IIED claims); *see also Foreman v. City of Port St. Lucie*, 294 F. App'x 554, 557 (11th Cir. 2008) (affirming a dismissal of an IIED claim for failure to state a cause of action). The IIED claim must be dismissed.

### 4. Negligent Hiring and Retention

Finally, the Court addresses Durham's negligent hiring and retention claims. To state a negligent hiring claim under Florida law, a plaintiff must allege (1) the employer was required to make an appropriate investigation of the employee and failed to do so; (2) an appropriate investigation would have revealed the unsuitability of the employee for the particular duty to be performed or for employment in general; and (3) it was unreasonable for the employer to hire the employee in light of the information he knew or should have known. *Malicki v. Doe*, 814 So. 2d 347, 362 (Fla. 2002). Negligent

12

retention occurs when an employer becomes aware or should have become aware of problems with an employee that indicate his unfitness, but the employer fails to take further action, such as investigation, discharge, or reassignment. *Tallahassee Furniture Co. v. Harrison,* 583 So. 2d 744, 753 (Fla. Dist. Ct. App. 1991). Further, Florida's impact rule applies to negligent hiring and retention, baring purely non-economic damages, even if the employer's underlying conduct was for an intention tort like IIED. *G4S Secure Sols. USA, Inc. v. Golzar,* 208 So. 3d 204 (Fla. Dist. Ct. App. 2016). To the extent that Durham relies on intentional infliction of emotional distress to support negligent hiring and retention claims, the dismissal of the IIED claim warrants the dismissal of these claims too.

Accordingly, it is now

**ORDERED:**

1. Defendants' Motion to Dismiss Plaintiff's Complaint (Doc. 12), is **GRANTED** to the extent Plaintiff's Complaint (Doc. 1) is a shotgun pleading.

2. Plaintiffs' Complaint (Doc. 1) is **DISMISSED without prejudice**. Plaintiff may file an amended complaint on or before **February 22, 2023**. **Failure to file an amended complaint will result in the Court closing this case without further order/notice**.

3. Defendants' Unopposed Motion for Leave to File Reply to Plaintiff's Response to Motion to Dismiss Complaint (Doc. 18) is **DENIED** as moot.

**DONE** and **ORDERED** in Fort Myers, Florida on February 7, 2023.

*Sheri Polster Chappell*
SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies:  All Parties of Record